UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER EARL
STRUNK, Individually of
New York,

                Plaintiff,

       -v-                                          1:19-CV-202

THE STATE OF NEW YORK,
ANDREW M. CUOMO,
Individually and as Governor,
ANDREA STEWART-COUSINS,
New York Senate Majority Leader,
CARL E. HEASTIE, New York
Assembly Speaker, THE CITY
OF NEW YORK, (NYC), WARREN
"BILL DE BLASIO" WILHELM,
JR., Individually and as Mayor of
NYC, DEMOCRATIC NATIONAL
COMMITTEE, (DNC), by its
Chairman Tom Perez, U.S.
DEPARTMENT OF HEALTH
AND HUMAN SERVICES, U.S.
DEPARTMENT OF HOMELAND
SECURITY, (DHS), PLANNED
PARENTHOOD FEDERATION
OF AMERICA, INC., and VOICE
FOR CHOICE: PLANNED
PARENTHOOD OF NEW YORK
CITY ACTION FUND, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

CHRISTOPHER EARL STRUNK
Plaintiff, Pro Se
Post Office Box 70
Corinth, NY 12822

| | |
|---|---|
| HON. LETITIA JAMES<br>Attorney General of the State of New York<br>Attorneys for New York State Defendants<br>The Capitol<br>Albany, NY 12224 | KEITH J. STARLIN, ESQ.<br>Ass't Attorney General |
| NEW YORK CITY LAW DEPARTMENT<br>Attorneys for New York City Defendants<br>100 Church Street<br>New York, NY 10007 | DAVID SUMNER THAYER, ESQ. |
| HON. GRANT C. JAQUITH<br>United States Attorney for the<br>   Northern District of New York<br>Attorneys for Federal Defendants<br>445 Broadway, Room 218<br>Albany, NY 12207 | JOHN D. HOGGAN, JR., ESQ.<br>Ass't United States Attorney |
| MANATT, PHELPS LAW FIRM<br>Attorneys for Planned Parenthood<br>   Defendants<br>7 Times Square Plaza<br>New York, NY 10036 | KENNETH D. FRIEDMAN, ESQ.<br>SAMANTHA J. KATZE, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On February 14, 2019, *pro se* plaintiff Christopher Earl Strunk ("Strunk" or "plaintiff") filed this civil action against five distinct sets of defendants: (1) the State of New York ("New York"), New York Governor Andrew M. Cuomo ("Governor Cuomo"), New York Senate Majority Leader Andrea Stewart–Cousins ("Senate Majority Leader Stewart–Cousins"), and New York Assembly Speaker Carl E. Heastie ("Assembly Speaker Heastie") (collectively the "State defendants"); (2) the City of New York (the "New York City") and New York City Mayor Warren "Bill De Blasio" Wilhelm, Jr. ("Mayor De Blasio") (collectively the "City defendants");

(3) the U.S. Department of Health and Human Services (the "HHS") and the U.S. Department of Homeland Security (the "DHS") (collectively the "Federal defendants");

(4) Planned Parenthood Federation of America, Inc. ("Planned Parenthood") and Voice for Choice: Planned Parenthood of New York City Action Fund, Inc. ("Planned Parenthood Action Fund") (collectively the "Planned Parenthood defendants"); and (5) the Democratic National Committee (the "DNC").

Broadly stated and liberally construed, Strunk's complaint[1] seeks to block an ongoing, broad-ranging "conspiracy" between the State defendants, the City defendants, the Federal defendants, the Planned Parenthood defendants, and the DNC. According to plaintiff, these defendants are all involved in the enforcement of the Reproductive Health Act ("RHA"), a New York statute that codifies certain protections set forth in *Roe v. Wade*, 410 U.S. 113 (1973). In plaintiff's view, the RHA threatens "imminent infanticide" and a range of other serious harms.

On February 27, 2019, Strunk moved for expedited injunctive relief against the alleged conspirators, Dkt. No. 6, and quickly followed that request up with a demand for an emergency hearing and/or an *ex parte* order preventing the RHA's enforcement, Dkt. No. 8.

Those requests were denied by text order on March 12, 2019. Dkt. No. 11. At that time, Strunk was advised to file proof of service with the Clerk of the Court and then proceed with his request for preliminary injunctive relief using standard motion practice procedures. *Id*. Plaintiff has moved for reconsideration of that text order. Dkt. No. 15.

---

[1] Strunk's complaint and other submissions suggest he may be an adherent to some variation of the "sovereign citizen" belief system. *See, e.g.*, *Rivera v. United States*, 105 Fed. Cl. 644, 646 (Fed. Cl. 2012) (describing aspects of same). Plaintiff's repeated citation to various federal constitutional provisions and statutes add complexity to his pleading but do not burnish the plausibility of its allegations.

Four other motions have since been filed. The State defendants, the City defendants, and the Federal defendants have each moved under Federal Rule of Civil Procedure ("Rule") 12(b)(1), (5)[2], and (6) seeking pre-answer dismissal of Strunk's complaint. Dkt. Nos. 30, 31, 35. The Planned Parenthood defendants, for their part, have moved under Rule 12(c) for a judgment on the pleadings. Dkt. No. 43.[3]

All of the pending motions have been fully briefed and will be decided on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from Strunk's complaint, Dkt. No. 1 at pp. 1-20[4], and attached exhibits, *id*. at pp. 21-56, and are assumed true for the purpose of resolving the motions to dismiss.

On January 22, 2019, New York enacted the RHA. Compl. ¶ 2. Plaintiff alleges the DNC sponsored the RHA's "expedited passage" because of an organizational concern that the U.S. Supreme Court's composition would soon change. *See id*. ¶ 1. According to plaintiff, the Planned Parenthood defendants were also involved in the RHA's passage because those entities stood to "unjustly benefit from the sale of mature fetus body parts and fluids." *Id*. ¶ 3. Plaintiff further alleges that these entities "use crypto currency . . . to launder illicit funds offshore." *Id*.

Whatever tenuous grip Strunk's factual allegations might have held on observable

---

[2] Only the State defendants have moved for Rule 12(b)(5) dismissal.

[3] The Planned Parenthood defendants answered Strunk's complaint. Dkt. No. 18.

[4] Pagination corresponds to CM/ECF.

reality seems to end there.[5] Plaintiff's pleading quickly pivots, accusing the State defendants of "aiding and abetting" an "ongoing illegal alien invasion" that is actually, in his view, part of a "racketeering scheme" run by the DNC. Compl. ¶ 13. Plaintiff invokes Benito Mussolini, apparently for illustrative purposes, to allege that this racketeering scheme represents "fascist corporatism." *Id*.

Strunk also takes pains to define at length certain economic and mathematical terms, compl. ¶ 20 (defining the Curley Effect, the Pareto Principle, and Price's Law), just before accusing defendants of using Facebook, a popular social media site, to do *something* that sounds vaguely unlawful or improper, *id*. ¶ 21 ("That defendants use of Facebook is a fraudulent inducement inter alia associated with RHA and Defendants do so without a proper warrant by Mark Zuckerberg as to the authenticity of Facebook source code.").

Strunk also includes some rather unique calculations of his own design:

> As of September 2018 the United States of America gold Holding is 8965 metric tons @ 32150.7 troy ounces per metric ton equals 288231025.5 troy ounces, and when divided by the 2010 Census that reported 308.7 million total people in the United States minus 22 million illegal aliens non US Citizens totals 286.7 million equals 1.0053 troy ounces per each private pre 1933 Citizen of the United States of America in FRB Note that according to Jim Rickarts of the CIA should be currently worth say $10,000 FRN for each 30 year Gold ounce US Treasury Bond.

Compl. ¶ 18.

Strunk then alleges it is his belief that the State defendants' addition of fluoride, a naturally occurring mineral, to the "centralized potable water supply . . . diminishes user Intelligence Quotient" and "renders residents increasingly dependent" on government actors,

---

[5] Strunk includes certain population estimates that appear to have some basis in fact, *see, e.g.*, compl. ¶¶ 16-17, but they are totally disconnected from any plausible legal claim.

- 5 -

posing "a health and safety risk to residents of New York and elsewhere."  Compl. ¶ 22.

Strunk also believes that the State defendants' "permissive use of Microwave communications 4G / 5G poses a health and safety risk . . . in that the electromagnetic frequencies in our body coexist in a complex manner and interact with each other nonstop."  Compl. ¶ 23.  In plaintiff's view, interference caused by "mobile phones, Wi-Fi routers, etc., create fatigue, sleep problems and imbalance to the body."  *Id*.  Plaintiff styles these changes as some kind of "massive wireless densification."  *See id*. ¶¶ 24-27, 30.

Strunk then complains that the State defendants have "propose[d] legislation that guts democratic norms, local control and sources of revenue."  Compl. ¶ 27.  Plaintiff alleges several ways that some or all of the named defendants "create dependency or force opponents to leave" New York.  *Id*.  These novel methods include taking away local control over the deployment of 4G/5G equipment, *id*. ¶ 27, declaring that all property belongs to New York City, *id*. ¶ 28, springing arbitrary awning fees and penalties on certain business communities, *id*. ¶ 29, flooding towns and cities with inmates from psychiatric facilities, *id*. ¶ 31.  According to plaintiff, these "questionable policies and actions" have harmed New York residents through loss of revenue and jobs.  *Id*. ¶¶ 33-35.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *N.Y. by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 745 (N.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2003)).  "The plaintiff bears the

burden of proving subject matter jurisdiction by a preponderance of the evidence." *Id*. at 746 (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Id*. (quoting *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014)).

### B. Rule 12(b)(5)

Rule 12(b)(5) permits a party to move for pre-answer dismissal of a complaint based on insufficient service of process. FED. R. CIV. P. 12(b)(5). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (citation omitted); *see also Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) ("On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient.").

### C. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted). "In making this determination, a court generally confines itself to the 'facts

stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* at 565 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

### D. Rule 12(c)

Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for granting a [Rule 12(c)] motion . . . is 'identical' to that of a 12(b)(6) motion to dismiss." *Utica City Sch. Dist.*, 177 F. Supp. 3d at 746 (quoting *Ginsburg*, 839 F. Supp. 2d at 540).

## IV. DISCUSSION

Because Strunk is proceeding *pro se*, his complaint, "however inartfully pleaded, must be held to less stringent standards than [a] formal pleading[ ] drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (citation and internal quotation marks omitted).

As the Second Circuit has repeatedly instructed, "[w]here, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Ahlers*, 684 F.3d at 60 (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)).

Strunk has also filed voluminous opposition memoranda. Dkt. Nos. 33, 37, 38, 39, 42, 46, 47, 49. Because he is *pro se*, plaintiff's additional submissions will be examined in an effort to determine the nature and sufficiency of his claims for relief. *See, e.g., Boguslavsky*

*v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1988) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.").

Notably, however, as Strunk himself concedes in his complaint, he has some prior litigation experience in federal court. *See, e.g.*, Compl. ¶ 38(e) (identifying himself as the plaintiff in *Strunk v. U.S. House of Representatives*, 99-CV-2168 (E.D.N.Y.)).

Indeed, a quick search for Strunk's full name in a directory of court decisions—just within the Second Circuit—turns up a number of additional results. *See, e.g.*, *Strunk v. U.S. Postal Serv.*, 361 F. App'x 217 (2d Cir. 2010) (summary order) (affirming dismissal of *pro se* complaint as frivolous); *Strunk v. Green Party of N.Y. State*, 144 F. App'x 917 (2d Cir. 2005) (summary order) (dismissing appeal from, *inter alia*, trial court's refusal to permit plaintiff to intervene *pro se* in the underlying action); *Strunk v. N.Y. State Ins. Fund*, 47 F. App'x 611 (2d Cir. 2002) (summary order) (affirming dismissal of *pro se* complaint on immunity grounds and for failure to state a claim under 42 U.S.C. §§ 1983, 1985, and 1986).

Clearly, Strunk is an experienced, active *pro se* litigant. Thus, while he is still entitled to deference and solicitude, he is entitled to somewhat less deference than would be appropriate for a totally unsophisticated newcomer to federal litigation. *Cf. Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) (suggesting withdrawal of special solicitude as to particular matters with which the *pro se* litigant is familiar might be permissible but rejecting notion that total withdrawal of solicitude is appropriate absent extraordinary showing of *pro se* litigant's experience in "all aspects" of a case).

### A. **Strunk's Claims**

Liberally construed in light of these principles, Strunk's *pro se* complaint seeks relief

under 42 U.S.C. § 1985(3). Compl. ¶¶51-58; *see also id*. ¶ 36 (discussing alleged conspiracy as federal jurisdictional basis for suit).

42 U.S.C. § 1985, originally enacted as part of the Civil Rights Act of 1871, outlaws "five broad classes of conspiratorial activity." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). "In general terms, [§ 1985] proscribe[s] conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right ot support candidates in federal elections." *Id*.

Strunk purports to enumerate three conspiracy-based causes of action, but he really just asserts two: a conspiracy between (1) the State defendants and other defendants to "commit infanticide," compl. ¶¶ 51-55, and (2) the named defendants to deny equal protection, *id*. ¶¶ 56-58.

### B. Defendants' Motions to Dismiss

The State defendants, the City defendants, the Federal defendants, and the Planned Parenthood defendants (collectively "defendants") contend that Strunk's complaint should be dismissed because he lacks Article III standing to bring any federal claims against them. In the alternative, defendants contend that (1) various immunity principles shield certain of the named defendants from facing suit in federal court; and, relatedly, that (2) plaintiff has failed to state any plausible claims for relief against the non-immune defendants.

"The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citation omitted); *see also Saleh*, 84 F. Supp. 3d at 137-38 ("Subject matter

jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first.").

### C. Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id*. (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

"One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *see also Upstate Citizens for Equality, Inc. v. United States*, 841 F.3d 556, 565 (2d Cir. 2016) ("Standing is an 'irreducible constitutional minimum' that must be satisfied for a federal court to exercise jurisdiction over a case.").

To establish Article III standing, a plaintiff must show "that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Id*.

Strunk's complaint must be dismissed because he has not satisfied this essential threshold requirement. At *best*, plaintiff's complaint can be read to allege the RHA violates fetal rights or, alternatively, that the State defendants' addition of fluoride to the drinking

water and/or widespread use of microwave communications poses health risks "to residents of New York and elsewhere." Compl. ¶¶ 22, 24-27, 30. Indeed, plaintiff repeatedly alleges that the State defendants' conduct, in tandem with others, "create[s] dependency or force[s] opponents to leave" New York. *Id*. ¶¶ 23-24, 27-35.

However, nowhere does Strunk allege that any of this conduct caused him to suffer a personal "invasion of a legally protected interest" that is "concrete and particularized" to him. Nor does he anywhere allege that any of this conduct affects him in a "personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

To the contrary, Strunk's complaint appears to be an attempt to vindicate his own idiosyncratic worldview by weighing in on various government policies. In other words, he is not seeking to remedy any "personal and *tangible* harm." *Cf. Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm along normally does not warrant exercise of jurisdiction.").

Strunk has brought similar kinds of claims in other federal courts, each of which has reached broadly the same conclusion: plaintiff lacks standing to pursue them. *See, e.g.*, *Strunk v. U.S. Dep't of Commerce*, 2010 WL 960428 (D.D.C. Mar. 15, 2010) (dismissing plaintiff's challenge to the decennial census for failing to allege an injury in fact); *Strunk v. N.Y. Province of the Society of Jesus*, 2010 WL 816121 (D.D.C. Mar. 8, 2010) (dismissing plaintiff's "verbose, disorganized, and confused collection of conclusory statements" for failing to allege an injury in fact where complaint alleged wide-ranging conspiracy between state, city, and federal governments and various religious organizations).

The same conclusion is appropriate in this case. Strunk's pleading, even viewed in

light of the special solicitude afforded to a *pro se* litigant, utterly fails to allege facts sufficient to conclude he has standing to sue the named defendants in this forum for any of the conduct outlined in his complaint. Accordingly, plaintiff's complaint will be dismissed for lack of subject matter jurisdiction.

### D. The DNC

Strunk has also named the DNC as a defendant in the caption of his pleading and in the "other defendants" section of his complaint. Compl. ¶ 47. With or without special solicitude, though, plaintiff's factual allegations fail to establish that this defendant engaged in any conduct that affects him in a "personal and individual way." *Spokeo, Inc.*, 136 S. Ct. at 1548. Accordingly, the DNC will be dismissed as a defendant, too. *See, e.g.*, *Forjone v. State Dep't of Motor Vehicles*, –F. Supp. 3d –, 2019 WL 5684437, at *7 (N.D.N.Y. Nov. 1, 2019) (dismissing non-moving defendants *sua sponte* where *pro se* plaintiff's complaint failed to "indicate how these particular defendants wronged him in a manner that might give rise to a plausible claim for federal relief").

### E. Leave to Amend

"Finally, although district courts in this Circuit are generally reluctant to dismiss a *pro se* plaintiff's action without permitting leave to replead, the Second Circuit has explained that it is nevertheless appropriate to do so in cases '[w]here it appears that granting leave to amend is unlikely to be productive." *Forjone*, 2019 WL 5684437, at *7 (citation omitted).

Permitting amendment would be unproductive in this instance. Upon careful review of his pleading and other submissions, there is absolutely no indication that Strunk might have even a single viable federal claim. Accordingly, leave to amend will be denied.

Indeed, Strunk's complaint—which juxtaposes some kind of general harm to New

York residents from fluoridated water and microwave radiation with a passing attempt to vindicate fetal rights under the umbrella of a federal civil conspiracy statute—appears to be both factually and legally frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("The term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.").

A claim is "factually frivolous" if the pleaded facts are "clearly baseless." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."). Likewise, a claim is "legally frivolous" "if it is based on an 'indisputably meritless legal theory.'" *Montero v. Travis*, 171 F.3d 757, 759-60 (2d Cir. 1999) (quoting *Neitzke*, 490 U.S. at 327).

Thus, even if the Court were somewhat inclined to deny defendants' motions to dismiss based on Strunk's lack of standing, or to permit plaintiff a chance to replead to better articulate a cognizable harm, it would nevertheless conclude dismissal remained appropriate based on the body of law set forth *supra*. *See, e.g.*, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding that a district court retains inherent authority to dismiss a frivolous complaint sua sponte "even when the plaintiff has paid the required filing fee").

## V. CONCLUSION

Strunk has failed to plead any plausible or cognizable federal claims against any of the named defendants. Because he will not be granted leave to amend, supplemental jurisdiction over any state law claims will be declined. *See* 28 U.S.C. § 1367(c)(3).

Therefore, it is

ORDERED that

1. The State defendants' motion to dismiss is GRANTED;

2. The City defendants' motion to dismiss is GRANTED;

3. The Federal defendants' motion to dismiss is GRANTED;

4. The Planned Parenthood defendants' motion for judgment on the pleadings is GRANTED;

5. Strunk's motion for reconsideration is DENIED;

6. The DNC is DISMISSED as a defendant in this action; and

7. Strunk's complaint is DISMISSED without leave to amend.

The Clerk of the Court is directed to terminate all pending motions and close the file.

IT IS SO ORDERED.

Dated: November 6, 2019
Utica, New York.

United States District Judge